**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

GERALD A. MONTAQUE, JR.,

                                        Plaintiff,                    5:25-CV-01625
                        v.                                            (BKS/PJE)

CITY OF SYRACUSE, et al.,

                                        Defendants.


━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━


**APPEARANCES:**

Gerald A. Montaque, Jr.
233 Glenwood Avenue
Syracuse, New York 13206
Plaintiff pro se

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION & ORDER

#### I. **Relevant Background**

Plaintiff pro se Gerald A. Montaque, Jr. commenced this action on November 20, 2025, with the filing of a complaint. *See* Dkt. No. 1 ("Compl."). On November 21, 2025, Chief Judge Sannes issued an Order administratively closing the case for failing to comply with the filing fee requirement or submit an in forma pauperis application ("IFP"). That day, plaintiff submitted an IFP application. *See* Dkt. No. 4. He also submitted a motion to file electronically. *See* Dkt. No. 5. On November 24, the Court reopened the case. On December 16, plaintiff filed a motion to stay his related Syracuse City Court case. *See* Dkt. No. 7. On December 17, he filed an emergency motion for a temporary

restraining order and preliminary injunction, which is pending before Chief Judge Sannes. *See* Dkt. No. 9.[1]  Also on December 17, plaintiff filed a motion to compel and a motion for in camera review, privilege log, and preservation of allegedly withheld records.  *See* Dkt. Nos. 9, 11.   On December 18, plaintiff filed a submission he refers to as a "corrected and consolidated statement of facts."  Dkt. No. 12.[2]  On December 17, the Court issued a text order directing plaintiff to serve the emergency motion, complaint, motion to stay, and text order on defendants.  *See* Dkt. No. 10.  On December 22, 2025, plaintiff requested an "early settlement conference or judicial mediation*."  Id.* at 14.  On December 25, plaintiff filed a letter seeking clarification of the status of his case and a request for an extension related to the December 17, 2025, text order.  *See* Dkt. No. 15.  Chief Judge Sannes granted the motion in part, to the extent that she tolled service deadlines with respect to the motion for a temporary restraining order and preliminary injunction and related materials and referred plaintiff's other requests in the December 25 letter – a ruling on plaintiff's IFP application and his request for an order identifying the John Doe defendants or permitting limited discovery – to the undersigned.  *See* Dkt. No. 16.  Chief Judge Sannes also referred to the undersigned "the resetting of any service deadlines."  *Id.*

## II. **In Forma Pauperis Application**

After review of plaintiff's IFP application, the undersigned concludes that he financially qualifies to proceed IFP in this matter.  *See* Dkt. No. 4.  Plaintiff is advised

---

[1]  On December 18, 2025, plaintiff filed a supplemental memorandum of law in support of this motion. *See* Dkt. No. 13.

[2]  Plaintiff provides that the submission for the "limited purpose of correcting and consolidating the factual record for clarity" and "does not assert new claims, does not withdraw existing allegations, and does not alter the legal theories already pleaded.  It is submitted to assist the Court in evaluating the pending motions and the operative Complaint."  Dkt. No. 12 at 1.

that the granting of IFP status does not excuse him from full financial responsibility for all other costs and fees he may incur in this matter.[3]  As the undersigned has granted plaintiff's IFP application, a review of his complaint pursuant to 28 U.S.C. §1915(e)(2), 28 U.S.C. §1915A is required.[4]

### III.  **Legal Standards: Initial Review**

28 U.S.C. § 1915 provides that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action." *Praileau v. Fischer*, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).  A court's screening of a complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a) does not preclude a later dismissal pursuant to Rule 12(b)(6)." *Tisdale v. Hartley*, 442 F. Supp. 3d 569, 572-73 (W.D.N.Y. 2020).

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks and citation omitted).  As the Second Circuit stated,

> our cases have also indicated that we cannot read into pro se
> submissions claims that are not consistent with the pro se

---

[3]  This includes, but is not limited to, copying, transcription, and witness fees.
[4] Despite the statutory language referring to incarcerated individuals, these requirements apply equally to non-prisoner pro se litigants seeking to proceed in forma pauperis.  *See* N.D.N.Y. L.R. 72.3(d) ("Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A when an application to proceed in forma pauperis is filed.").

> litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law. . . .

*Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks, citations, and footnote omitted*); see also Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir. 2008).  Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Further, "pro se pleadings still must comply with . . . the Federal Rules of Civil Procedure."[5]  *Kastner v. Tri State Eye*, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994));[6] *see also* FED. R. CIV. P. 8(a)(2) (providing that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief," "a short and plain statement of the grounds for the court's jurisdiction . . .  and . . . a demand for the relief sought . . . ."). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims."   *Gonzales v.*

---

[5] Hereinafter, "Fed. R. Civ. P."
[6] All unpublished cases cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.  *See Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

*Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted).  However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* (citations omitted).

IV. **Section 1915 Review**

A. **Complaint**[7]

On October 13, 2025, after following him for "several blocks without any traffic hazard," plaintiff was pulled over by defendants C. Rich, Milot, Sarag Legge, and "a Hispanic Officer (John Doe #2)," who are Syracuse Police Department officers.  Compl. at 2.  Plaintiff "immediately began recording and politely asked for the reasonable articulable suspicion for the stop and for any specific plate-placement issue." *Id.* Plaintiff had a single, front-mounted Ohio license plate on his vehicle. *See id*.  Plaintiff contends that "[o]fficers, including C. Rich, Sarah Legge, and a Hispanic officer (John Doe #2), responded with hostility, mocked Plaintiff's mention of his CDL, and treated his request for a supervisor as disrespectful." *Id.* at 3.

"SPD ordered the vehicle towed and seized Plaintiff's Ohio plate without warrant, court order, or notice of any hearing or procedure to contest the seizure."  Compl. at 3.

---

[7] As a threshold issue, plaintiff's complaint fails to comply with Federal Rule of Civil Procedure ("Fed. R. Civ. P. ") 10 as it does not state claims in numbered paragraphs, each limited to a single set of circumstances. *See* Fed. R. Civ. P. 10.  However, out of solicitude to the pro se plaintiff, and because the complaint is decipherable, despite this failure, the undersigned does not base any dismissal recommendations on this ground.

Plaintiff states that he "renewed his registration and insurance within 24 hours of the stop as shown by Ohio BMV Order #99983255206785 and updated Progressive insurance cards." *Id.* "Only after the tow was initiated and Plaintiff had invoked his rights did officers issue three tickets (VTL 1163D 'signal,' VTL 1163D 'signal: parked,' and VTL 402 'improper plate.')." *Id.* Plaintiff provides that he was not issued a citation for "'unregistered' or 'uninsured' operation on October 13, even though those were the alleged reasons given to justify the tow and plate seizure." *Id.* Plaintiff contends that the timing and nature of the citations show that the tow and plate seizure were retaliatory, "not grounded in lawful enforcement." *Id.*

Plaintiff contends that despite renewing his registration and insurance and providing "that documentation to the DA's Office and SPD," his vehicle is still impounded and accruing fees and his Ohio license plate "remain[s] seized without any due-process mechanism or written explanation for continued deprivation." Compl. at 3. Plaintiff went to "SPD Central Records" and was told that "SPD 'does not return plates' and that plate are sent to DMV, but no written policy, hearing procedure, or release form was provided." *Id.*

Plaintiff states that he has an October 28, 2025, plea proposal from Assistant District Attorney ("ADA") Michael J. Mordue, on "DA Form 437," which "referenc[ed] VTL

402.4[8] and two counts of VTL 1163d"[9] and "offered amendments and dismissals but required Plaintiff to plead guilty to amended charges and treat the plea as equivalent to a conviction after trial, with potential suspension of his license and CDL consequences." Compl. at 3.  The form "stated the DA's Office was 'ready for trial' and instructed that the proposal be returned directly to the court (not the DA)."  *Id.*  Plaintiff "declined to sign the proposal, insisting on lawful reasons for the tow, release of his plate and vehicle, and full disclosure of FOIL materials before any plea." *Id.*

Plaintiff provides, on unspecified dates, he submitted "multiple FOIL requests concerning the stop, tow, and internal communications."  Compl. at 3.  On October 31, 2025, ADA Oastler[10] e-mailed plaintiff "stating that he had assembled 'most' of the FOIL materials" and that "they would be 'in court' on a vague 'Wednesday,' without specifying any date, time, part, or judge."  *Id.* at 4.  Plaintiff states that he did not receive "written notice from the Court scheduling such a Wednesday appearance," and did not know what date ADA Oastler was referring to in stating "Wednesday." *Id.*

Plaintiff received a November 5, 2025, "Official Notice to Appear" from Syracuse City Court Chief Clerk Valerie James "setting Plaintiff's first appearance for January 14,

---

[8] N.Y. V.T.L. § 402(4): "No person shall operate or drive a motor vehicle upon the public highways of this state having displayed thereon number plates not proper for such vehicle under the provisions of this chapter and, upon a conviction for this offense, the number plates shall be surrendered to the court for delivery to the commissioner. The failure to produce the certificate of registration or registration renewal stub of a vehicle shall be presumptive evidence of displaying number plates not proper for the vehicle. Every annual number plate issued shall remain the property of the state until the correct registration fee is paid. Every number plate of a permanent nature for use with a removable date tag which shall be issued shall remain the property of the state unless and until the commissioner finds that the state no longer has use for it. Number plates belonging to the state shall be under the control of the commissioner."
[9] N.Y. V.T.L. § 1163(d): "Turning Movements and Required Signals"
[10] Plaintiff contends that he names defendants ADA Bradley W. Oastler and ADA Michael J. Mordue in their individual and official capacities "for administrative/FOIL-related conduct only."  Compl. at 1.

2026 at 9:30 a.m., listing only three charges: VTL 1163D 'signal: parked'; VTL 1163D 'signal'; and VTL 402 'improper plates.'"  Compl. at 4.

On November 10, 2025, plaintiff received an e-mail from ADA Oastler stating that his FOIL request documents were "in court last Wednesday to be handed to you, but you did not show up, and that the materials had instead been mailed."[11]  Compl. at 4. Plaintiff contends that Oastler's "statement was false" as "Syracuse City Court's official documents" show a sole appearance for "traffic docket CR-11422-25" on January 14, 2026, and 9:30 AM, and that there had been no "Wednesday session' . . . scheduled or noticed to Plaintiff for early November." *Id.*  Plaintiff contends he received from the Syracuse Police Department, the District Attorney's Office, and the City of Syracuse no "written procedure or hearing for return of Plaintiff's property, despite its renewed registration and multiple written motions[.]"  *Id.* at 5.

Plaintiff complains of (1) conflicting responses to his FOIL requests, stating that he received "[f]ive different FOIL acknowledgement letters with five conflicting completion dates, ranging from December 2025 to February 2026, all for the same incident; (2) ADA Oastler's "false claim" that FOIL materials were made available for "an in-court hand-off that never occurred," (3) receiving "no notice" of a "'Wednesday' court date and that City Court confirmed there was no such appearance"; (4) that when he sent a formal notice to info@syracusepolice.org, it "bounced back" with "'address not found' error" which "further obstruct[ed] communication"; (5) the City FOIL office telling him that each of his FOIL requests were "separate and that original completion dates remained in effect, despite the conflicting and unreasonable delays" and that it "refused

---

[11] Plaintiff does not state whether he ever received the mailed documents.

to unify the requests," "correct the record" regarding ADA Oaster's false reference to a Wednesday court appearance, and "continued to push completion out as far as February 3, 2026, while Plaintiff's vehicle remained impounded." Compl. at 4.

Plaintiff contends that his vehicle has accrued and is accruing substantial storage fees, and he is without a necessary vehicle for his work as a "CDL professional and business owner[,]" resulting in lost work opportunities and income. Compl. at 5. Plaintiff claims that he has suffered "significant emotional distress, anxiety, and humiliation" from "being falsely portrayed as 'uninsured,' 'unregistered,' 'unruly,' and as someone who 'failed to appear for court' when no such appearance was ever scheduled." *Id.* Plaintiff argues that "defendants' actions[,]" collectively, were intentional, malicious, and "done with reckless disregard for Plaintiff's constitutional rights." *Id.*

Plaintiff's first cause of action seeks to bring claims for violations of his First and Fourteenth Amendment rights for "retaliatory stop and false citations," alleged against Officers Rich, Milot, Legge, John Does 1 and 2, and the City of Syracuse. Compl. at 5. Plaintiff contends that in response to his questioning the stop, requesting a supervisor, and recording, "SPD officers" retaliated by towing and impounding his vehicle, seizing his Ohio license plate, and "issuing tickets only after Plaintiff asserted his rights, in order to punish him and shield themselves of scrutiny." *Id.* Plaintiff argues that the City of Syracuse "is liable under Monell because this retaliation occurred pursuant to its policies or customs regarding vehicle seizures, plate retention, and tolerance of retaliatory enforcement." *Id.* at 5.

Plaintiff's second cause of action is pursuant to the Fourth and Fourteenth Amendments and alleged against defendants Rich; Milot; Legge, John Does 1, 2, and 3;

City of Syracuse; and "John/Jane Doe Defendants."  Compl. at 5.  Plaintiff contends, collectively, that defendants violated the Fourth and Fourteenth Amendments when they towed his vehicle and seized his license plate "without a warrant, court order, probable cause, or statutory authority, and without issuing any contemporaneous 'unregistered' or 'uninsured' citation."  *Id.* at 6.  Plaintiff asserts that the continued seizure of his vehicle and license plate "after he renewed registration and insurance and provided proof of compliance is an ongoing unreasonable seizure and deprivation of property." *Id.*  Plaintiff contends that the tow-yard defendants "[a]cted under color of law by following SPD orders and refusing to release the vehicle absent governmental approval."  *Id.*

Plaintiff's third cause of action alleges denial of due process and access to the Courts in violation of the Fourteenth Amendment, alleged against the City of Syracuse, Onondaga County, "SPD officers," John Doe 3 (SPD records/impound clerk), John/Jane Doe FOIL Officers, ADA Oastler, and ADA Mordue. Compl. at 6.  Plaintiff states that defendants deprived him of his property – his vehicle and license plate – without written notice, a hearing, or "meaningful process for release." *Id.*  Plaintiff further contends that (1) Oastler's allegedly false statement regarding the FOIL responses being available during the allegedly nonexistent "Wednesday" Court appearance; and (2) the "FOIL office" issuing "multiple conflicting dates," refusing to consolidate his FOIL requests, and "knowingly delaying" access to records violated his procedural due process rights and interfered with right of access to the Courts.  *See id.*  Plaintiff asserts that "Onondaga County is liable under *Monell* for the DA's Office's patterns of FOIL obstruction, false statements, and refusal to correct the record." *Id.*

Plaintiff's fourth cause of action seeks to set forth a claim against ADA Oastler, ADA Mordue, Onondaga County, and City of Syracuse for "fabrication of records and false 'failure to appear' narrative" in violation of the Fourteenth Amendment for Oastler's alleged fabrication of a "false court-date and failure-to-appear records." Compl. at 6-7. Plaintiff contends that "fabricated statements were used to justify ongoing deprivation of Plaintiff's property and to obstruct his efforts to obtain judicial records and judicial review" in violation of the Fourteenth Amendment. *See id*. at 7. He contends that Oastler's conduct "is not a core prosecutorial function," rather, "administrative misconduct and record falsification." *Id.* He also contends that defendants' alleged conduct violated his First Amendment rights because, in retaliation for his asking for the "articulable suspicion" for the traffic stop, asking to speak to a supervisor, and recording the encounter, defendants Rich, Milot, Legge, John Doe 1 and 2, and the City of Syracuse towed his vehicle, seized his license plate, and issued him traffic tickets "in order to punish him and shield themselves from scrutiny." *Id.*

Plaintiff provides that his fifth cause of action is against the City of Syracuse and Onondaga County pursuant to *Monell*. *See* Compl. at 7. Plaintiff states that the City of Syracuse and County of Onondaga are liable for all of the alleged constitutional violations set forth in his complaint under *Monell* because the alleged constitutional violations "were caused by the policies, practices, or customs of the City of Syracuse and Onondaga County, including": (1) "a policy/custom of seizing and retaining vehicles and out-of-state plates without charges or process"; (2) "[f]ailure to train SPD officers regarding reciprocity for out-of-state plates without charges or process"; (3) "[f]ailure to train and supervise FOIL officers to comply with N.Y. Public Officers Law § 89(3)";

(4) "DA Office practices of misrepresenting court dates and FOIL status instead of providing accurate records and notice"; and (5) "tolerance of retaliatory enforcement of misconduct rather than correction and discipline."  *Id.*

Plaintiff's sixth cause of action raises several state-law claims pursuant to this Court's supplemental jurisdiction.  *See* Compl. at 7.  Plaintiff contends that "SPD officers, SPD records staff, tow-yard defendants, and municipalities" committed (1) conversion, (2) trespass to chattels, (3) negligence, and (4) intentional infliction of emotional distress in violation of New York State law.  *See id.*  Plaintiff contends that the identified defendants "wrongfully exercised dominion over Plaintiff's vehicle and Ohio plate, constituting conversation and trespass to chattels."  *Id.*  Plaintiff argues that the conduct "also constitutes negligence and gross negligence in seizing, retaining, and failing to release Plaintiff's property after notice of compliance."  *Id.*  Plaintiff contends that "Defendants' intentional pattern of false statements, FOIL obstruction, retaliatory tickets, and prolonged deprivation of basic transportation rises to intentional infliction of emotional distress under New York Law."  *Id.*

Plaintiff asserts that his damages are the expenses relating to towing, storage, and administrative fees; loss of use of his vehicle; lost wages/income; expenses for alternative transportation; emotional distress, humiliation, anxiety, loss of sleep; and damage to his reputation "as a professional driver and business owner."  Compl. at 7-8. He seeks compensatory damages of "not less than $2,500,000.00"; punitive damages against the individual defendants; "declaratory relief that Defendants' actions violated Plaintiff's constitutional rights"; that the Court "[o]rder the immediate release of Plaintiff's

vehicle and Ohio license plate . . . , and waiver or reimbursement of all towing and storage fees"; and costs.  *Id.* at 7-8.

In plaintiff's December 18, 2025, filing titled "corrected and consolidated statement of facts"[12] he says, at the time of the stop in question, his vehicle "bore a single Ohio license plate affixed to the front of the vehicle," and that he "possessed insurance-related documentation associated with his vehicle," but that he was "temporarily unable to immediately retrieve all digital records on his phone while simultaneously recording the encounter."  Dkt. No. 12 at 1.   He further states that his vehicle registration had lapsed at the time of the stop.  *Id.* [13]  Plaintiff provides, "[b]ecause the stop occurred on a federal holiday, Plaintiff could not renew his registration" until the next day.  *See id.*  Plaintiff contends that "[d]espite the minor and temporary nature of the registration lapse, and despite the availability of reasonable alternatives such as issuance of a summons or allowing the vehicle to remain legally parked pending a renewal, a supervising officer ordered the vehicle towed."  *Id.* at 1.

He further states that at no point during the stop "did any officer allege that Plaintiff's vehicle was uninsured, and no citation was issued for lack of insurance." Compl. at 3.  Plaintiff further adds that the seizure of his property was "not justified by public safety concerns but were punitive in nature."  *Id.* at 2.

---

[12] Plaintiff contends that this filing is intended only "to assist the Court in evaluating the pending motions and the operative complaint."  Dkt. No. 12.  Out of special solicitude, because plaintiff's filing indicates an intention that this filing is *not* intended to supersede and replace the original pleading in its entirety, as an amended complaint would have done, the undersigned will interpret this filing as a supplement to the complaint.

[13]  The undersigned does not herein detail all of the statements included in this filing because most of it is redundant of the original complaint.  The undersigned has, however, carefully read and considered the entirety of this filing.

B. **Discussion**[14]

1. **FOIL-Based Claims**

Plaintiff raises various Fourteenth Amendment due process claims arising out of his FOIL requests, contending that the various and/or conflicting dates of completion, alleged delays, and ADA Oastler's allegedly-false statements regarding a court appearance that plaintiff missed,[15] during which time some of the requested documents would have been made available to him, violated his Fourteenth Amendment Due process rights. *See* Compl. at 6. These allegations fail to state a claim under the Fourteenth Amendment.

Where a plaintiff raises a Fourteenth Amendment due process claim, a Court must first assess whether the plaintiff has a protected property interest in the underlying subject. *See Jackson v. Wilcox*, No. 1:23-CV-130 (MAD/CFH), 2023 WL 2756489, at *5 (N.D.N.Y. Apr. 3, 2023), *report and recommendation adopted*, No. 1:23-CV-130 (MAD/CFH), 2023 WL 4230351 (N.D.N.Y. June 28, 2023) (quoting *Narumanchi v. Bd. of Trustees of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988)).

> "If a protected interest is identified, a court must then consider whether the government deprived the plaintiff of that interest without due process." *Id.* "As several courts in th[is] Circuit have held, 'a plaintiff has no property interest in obtaining FOIL documents.'" *Lawrence v. Baxter*, No. 03-CV-228S, 2004 WL 1941347, at *3 (W.D.N.Y. Aug. 31, 2004) (collecting cases) (citations omitted), *aff'd*, 139 F. App'x. 365 (2d Cir. 2005) (summary order). "Specifically, because FOIL documents need only be produced after a request and investigation by the state entity, individuals making such request do not have anything beyond a mere expectation in such

---

[14]  The Court observes that plaintiff raised closely-related claims in a case pending before the Western District of New York. *See Montaque v. Hanlon*, 25-CV-694 (JLS) (commenced July 28, 2025). There, the Court denied plaintiff's application for a temporary restraining order, *Montaque v. Hanlon*, No. 25-CV-694 (JLS), 2025 WL 2848563 (W.D.N.Y. Aug. 29, 2025) (appeal pending), pursuant to the *Younger* abstention doctrine, and review of the merits of plaintiff's amended complaint pursuant to 28 U.S.C. § 1915 is presently pending in that District.
[15] As noted, plaintiff contends is false, contending he never received notice of the "Wednesday" appearance, and the city court confirmed that there was no appearance scheduled. *See* Compl.

documents, and, thus, do not have an entitlement to requested documents that is protected by the Fourteenth Amendment." *Simpson v. Town of South Hampton*, No. 06-CV-6743, 2007 WL 1755749, at *4 (E.D.N.Y. 2007); s*ee also Abreu*, 2018 WL 11466956, at *25 ("Multiple district courts in this circuit have held that a plaintiff has no constitutionally protected interest in obtaining FOIL documents.").

*Jackson*, 2023 WL 2756489, at *5. As plaintiff does not have a property interest in the FOIL material, he cannot state a claim for Fourteenth Amendment due process violations in connection with the alleged delay in processing requests, failure to consolidate, or failure to produce FOIL documents. *See id.* Accordingly, it is recommended that this claim be dismissed for failure to state a claim. *See id.*

Even if plaintiff were to assert[16] that the above allegations also demonstrate a violation of New York FOIL law, "it is well settled that such a claim, standing alone, is insufficient to support a Section 1983 claim." *Jackson*, 2023 WL 2756489, at *3; *see also Summa v. Richmond Cnty. Dist. Attorney's Off.*, No. 25-CV-04283 (HG) (LKE), 2025 WL 2597174, at *3 (E.D.N.Y. Aug. 27, 2025) ("Plaintiff's claims against the various defendants to the extent he requests access to the documents in his FOIL requests cannot proceed as this claim does not arise under federal law. Plaintiff requested documents from the District Attorney's Office pursuant to New York's Freedom of Information Law ("FOIL "); *Morrison v. MTA New York City Transit*, No. 24-cv-5992, 2024 WL 4450778, at *2 (E.D.N.Y. Oct. 9, 2024) ("Federal courts do not have independent jurisdiction to enforce state laws granting public access to official state records."); *Melvin v. City of New York*, No. 24-cv-4118, 2025 WL 692126, at *6

---

[16] Plaintiff does not state a separate cause of action for this, but within his "*Monell*" section against the City of Syracuse and Onondaga County, he contends that defendants "failed to train and supervise FOIL officers to comply with N.Y. Public Officers Law § 89(3)." Compl. at 7. It is unclear if this reference is intended to raise a separate cause of action for a violation of state FOIL law, but the undersigned includes this analysis for the sake of completeness and clarity.

(S.D.N.Y. Mar. 4, 2025) ("FOIL violations do not constitute federal constitutional claims sufficient to state a claim pursuant to Section 1983").  Rather, "[t]he appropriate vehicle for challenging denials of access guaranteed by the New York Freedom of Information Law is a state court proceeding pursuant to N.Y.C.P.L.R. Article 78 upon exhaustion of administrative remedies."  *Jackson*, 2023 WL 2756489, at *4-5 (quoting *Ramos v. Culick*, No. 6:16-CV-01312 (FJS/TWD), 2017 WL 835406, at *4 (N.D.N.Y. Feb. 9, 2017) (quoting *Schuloff v. Fields*, 950 F. Supp. 66, 67-68 (E.D.N.Y. 1997)), *report and recommendation adopted*, 2017 WL 823580 (N.D.N.Y. Mar. 2, 2017) (additional citations omitted).  Accordingly, it is recommended that plaintiff's FOIL-related Fourteenth Amendment due process claims be dismissed with prejudice for failure to state a claim, and, to the extent his complaint may be liberally read as raising violations of New York State FOIL law, such claims also be dismissed with prejudice for failure to state a claim.

### 2.  Fourteenth Amendment Procedural Due Process

Plaintiff contends that the seizure of his license plate and the towing and impounding of his vehicle and the failure to (1) release his vehicle once he presented defendants with current registration and/or insurance, or (2) provide a procedure through which he could seek their return, violates his Fourteenth Amendment due process rights.  *See* Compl. at 5-6.  Plaintiff collectively raises this claim against Officers Rich, Milot, Legge, John Does 1-3, City of Syracuse, and the tow-yard defendants.  *See id.* at 5.

As to plaintiff's Fourteenth Amendment procedural due process claims, "[a] claim under Section 1983 for deprivation of procedural due process raises two threshold

questions: (1) 'whether the plaintiff possessed a liberty or property interest' and, if so, (2) 'what process was due before the plaintiff could be deprived of that interest.'" *Colson v. New York Police Dep't*, No. 13-CV-5394 (JG), 2015 WL 64688, at *9 (E.D.N.Y. Jan. 5, 2015). Where the concern relates to post-deprivation procedure, "the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir.1996).

> The touchstone of due process . . . is 'the requirement that a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'" *Spinelli v. City of New York*, 579 F.3d 160, 169 (2d Cir. 2009) (second alteration in original) (quoting *Mathews*, 424 U.S. at 348–49, 96 S.Ct. 893); *see also Mathews*, 424 U.S. at 333, 96 S.Ct. 893 ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965))).

*HVT, Inc. v. Port Auth. of New York & New Jersey*, 798 F. Supp. 3d 349, 358 (E.D.N.Y. 2025). "In determining 'what process is due,' we recognize that 'due process is flexible and calls for such procedural protections as the particular situation demands.'" *Id.* (quoting *Francis v. Fiacco*, 942 F.3d 126, 142-43 (2d Cir. 2019)).

a. **Seizure of License Plate, Towing of Vehicle, Initial Impoundment**

The undersigned first addresses plaintiff's claim with respect to the seizure and retention of his Ohio license plate.[17] Plaintiff does not have a property interest in his license plate; thus, the removal and confiscation of his license plate is not a "seizure"

---

[17] The undersigned notes that this cause of action is also improper because plaintiff makes a collective/group pleading which does not clarify which defendants are involved, and, thus, does not set forth each defendants' personal involvement in the alleged constitutional violations. For example, despite naming the tow-yard defendants in the cause of action, there is no allegation that they had anything to do with the seizure of the license plate. Plaintiff's cause of action fails to meet Rule 8's pleading standards. *See Boykin v. Westchester Cnty. Jail*, No. 22-CV-10513 (CS), 2024 WL 4252040, at *8 (S.D.N.Y. Sept. 20, 2024).

under the Fourth Amendment.  *See VW Credit Leasing LTD. v. Runway Towing Corp.*, 757 F. Supp. 3d 271, 284 n.6 (E.D.N.Y. 2024), *reconsideration denied*, No. 20-CV-05306 (HG) (MMH), 2025 WL 501218 (E.D.N.Y. Feb. 14, 2025) (quoting *Perry v. McDonald*, 280 F.3d 159, 169 (2d Cir. 2001) ("The Court notes that the Second Circuit has held that 'automobile license plates are governmental property intended primarily to serve a governmental purpose,' in the speech context, further undermining VW's argument that it held a protected property interest in the license plates.").  Therefore, it is recommended that plaintiff's Fourth Amendment claim, with respect to the seizure of the license plate, be dismissed with prejudice for failure to state a claim upon which relief can be granted.

With respect to plaintiff's vehicle, assuming for purposes of this review that plaintiff is the owner of his motor vehicle, he has a property interest the vehicle. However, as to the initial seizure, plaintiff's case falls within the community caretaking exception to the Fourth Amendment's warrant requirement.  Police officers, under the community caretaking exception, "may exercise their discretion in deciding whether to impound a vehicle,' and 'whether a decision to impound is reasonable under the Fourth Amendment is based on all the facts and circumstances of a given case."  *VW Credit Leasing LTD.*, 757 F. Supp. 3d at 284.  Given that plaintiff did not have proper registration and either did not have valid insurance or proof of valid insurance at the time of the stop and could not legally drive the vehicle without registration, insurance, or, once seized, a license plate, towing and impoundment of the vehicle was reasonable within the meaning of the Fourth Amendment.  *See VW Credit Leasing LTD.*, 757 F. Supp. 3d at 284. (quoting *Miranda v. City of Cornelius*, 429 F.3d 858, 865 (9th Cir.

2005) ("Where, as here, 'the driver's violation of a vehicle regulation prevents the driver from lawfully operating the vehicle,' and 'it is necessary to remove the vehicle from a[ ] public location,' 'impoundment may be proper under the community caretaking doctrine.'").  Further, as plaintiff was present at the time of the tow, it can be reasonably concluded that he was aware that the vehicle was being towed and impounded.  *Cf. VW Credit Leasing LTD*, 757 F. Supp. 3d at 287 (finding that lessee had constitutionally-sufficient pre-deprivation process before vehicle was towed in that she was advised, through multiple letters, that failure to pay overdue tolls and lapsed insurance coverage could result in suspension of vehicle registration and that an unregistered vehicle could not be legally driven).

Plaintiff contends that he was not ticketed for lack of registration as support for his claim that defendants, collectively, in violation of the Fourth Amendment, towed his vehicle and seized his plate "without a warrant, court order, probable cause, or statutory authority, and without issuing any contemporaneous 'unregistered' or 'uninsured' citation." Comp. at 3, 5.  However, "[i]t is well-settled that "the states may enact laws requiring owners of motor vehicles to register those vehicles.'" *Dan v. State of New York*, 1:24-CV-01233 (MAD/PJE) (quoting *Ali v. Siwek*, 23-CV-354 (LJV), 2023 WL 9184481, at *3, 3 n.4 (W.D.N.Y. Dec. 18, 2023), then citing *Munz v. Harnett*, 6 F. Supp. 158, 159-60 (S.D.N.Y. 1933) ("[A] state as an exercise of the police power may prescribe uniform regulations covering the ownership and operation" of motor vehicles and observing that "there cannot be the slightest doubt of the validity of [the] requirement" that motor vehicles be registered) (citing, *inter alia, Hendrick*, 235 U.S. at 622).

Although plaintiff contends that he was not issued any tickets for his operation of an unregistered vehicle, that allegation is belied by the four corners of the complaint. Plaintiff provides that (1) his summons from the Court indicates that he violated NY VTL 402, and (2) ADA Mordue sent plaintiff a plea proposal that "referenc[ed] VTL § 402.4." Compl. at 3. Such law provides, "[t]he failure to produce the certificate of registration or registration renewal stub of a vehicle shall be presumptive evidence of displaying number plates not proper for the vehicle." NY § VTL 402(4). Thus, the citation for a violation of NY § VTL 401(4),[18] which charges plaintiff as having an improper license plate because of its lack of registration, and plaintiff's admission in his complaint that he did not have valid registration and insurance (or, at minimum, did not present it to the officers during the stop) demonstrates that the tow and impoundment of the vehicle was reasonable as plaintiff was not legally allowed to continue to drive his vehicle. *See* NY VTL § 401 ("[n]o motor vehicle shall be operated or driven upon the public highways of this state without first being registered in accordance with the provisions of this article, except as otherwise expressly provided in this chapter."). Moreover, in admitting that he was operating his vehicle without valid registration, he concedes that, even if not ticketed for violating NY VTL § 401, specifically, his operation was also violative of that law. Thus, plaintiff's Fourteenth Amendment due process claim with respect to the ticketing for VTL 402(4), the towing of his vehicle, and its initial impoundment fails to state a claim upon which relief can be granted. Thus, it is recommended that this claim

---

[18] NY VTL § 401: "Registration of motor vehicles; fees; renewals. 1. Registration by owners. a. No motor vehicle shall be operated or driven upon the public highways of this state without first being registered in accordance with the provisions of this article, except as otherwise expressly provided in this chapter."

be dismissed, and the dismissal be with prejudice as a better pleading cannot cure these defects.

### b. **Continued Impoundment**

As to the continued impoundment of his vehicle, it appears that plaintiff may be alleging two separate, related issues: (1) insufficient notice regarding post-deprivation remedies, and (2) inadequacy of post-deprivation remedies with respect to the continued impoundment of his vehicle. *See generally* Compl.

### i. **Notice**

Plaintiff contends that "SPD, the DA's Office, and the City of Syracuse refused to provide any written procedure or hearing for return of Plaintiff's property,[19] despite his renewed registration and insurance and multiple written motions[.]" Compl. at 5. Although plaintiff does not explicitly set this out in a separate cause of action, out of special solicitude, the undersigned is of the opinion that plaintiff is attempting to allege that, in violation of the Fourteenth Amendment, those defendants violated his Fourteenth Amendment right to notice of post-deprivation procedures with respect to his vehicle in that he was not advised as to how to challenge the fact of the impoundment, seek its release, or challenge the associated impoundment fees.[20]

"The due process clause of the Fourteenth Amendment requires that individuals receive notice and an opportunity to be heard before the Government deprives them of property." *Toyota Lease Tr. v. Vill. of Freeport*, No. 20-CV-2207, 2023 WL 4443992, at

---

[19]   As the undersigned has concluded that plaintiff has no property interest in his license plate, this argument is addressed only with respect to the vehicle.

[20]   To be clear, this differs from receipt of notice about the fact of the impoundment as plaintiff was present during its towing and does not dispute that he was aware it was to be impounded. Rather, plaintiff complains of a lack of notice regarding the return of his vehicle.

*9 (E.D.N.Y. Jan. 24, 2023). Procedural due process requires notice reasonably calculated under all the circumstances "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Walker v. New York State Dep't of Health*, 788 F. Supp. 3d 427, 501 (E.D.N.Y. 2025) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

As noted, assuming plaintiff is the owner of the subject vehicle, he has a property interest in his vehicle. Insofar as plaintiff suggests that he has not been informed of any procedure to pursue in order to seek the release of his vehicle from impoundment or challenge the related fees, the law provides that he must receive such notice. Plaintiff does not provide the Court with a copy of the notice he received from the Court regarding the January 14, 2026, traffic court proceeding or any other communication relating to this proceeding. However, if it is the case that the communication plaintiff received from the court related only to the traffic citations and does not indicate whether he could challenge the impoundment and related fees at this proceeding, the notice of the January 14, 2026, hearing likely would not suffice to give notice of the post-deprivation procedure/process to challenge the continued impoundment and fees. *See Bowser v. City of New York*, No. 23 CIV. 6183 (DG) (VMS), 2025 WL 1707174, at *7 (E.D.N.Y. Feb. 25, 2025) ("The Court rejects Defendants' argument that the Court should construe the notice of the right to a hearing as to the fine for the Ticket as notice of the right to challenge the boot and tow fees at the same hearing. Notice that a person can challenge one particular fee or violation cannot reasonably be understood to be notice of a right to challenge other fees. The omission of a notice may have very real consequences for the person accused of the violation. An individual, such as Plaintiff,

22

may make the calculus that challenging a $60.00 fine for a ticket may not be worthwhile but may decide, if given notice of the right to a hearing to challenge a $185.00 boot fee, $185.00 tow fee, and/or related storage fees, that engaging in such hearing process would be worthwhile. If notice of the right to a hearing provides the recipient with notice of the right to challenge only some, but not all, of the subject matters at issue, the notice is of no value to the recipient as to the subject matter not included in the notice, such that Defendants' argument is unpersuasive.").

However, the undersigned determines that the claim cannot proceed.  As stated, it fails to meet Rule 8's requirements.  As noted, as plaintiff has not provided the Court with any of the communications, the Court cannot assess whether plaintiff was given any notice or if that notice could be sufficient under Fourteenth Amendment.  Further, as plaintiff has improperly set forth a group pleading and has not sufficiently alleged the named defendants' personal involvement[21] in the alleged notice violation, the claim also fails to meet Rule 8's pleading requirements.  *See Gonzalez v. Yepes*, No. 19-CV-267, 2019 WL 2603533, at *7 (D. Conn. June 25, 2019) ("As a corollary of the personal involvement requirement, complaints that rely on 'group pleading' and fail to differentiate

---

[21] "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)); *see also Moore v. Westchester Cnty.*, No. 18-CV-7782, 2019 WL 3889859, at *5 (S.D.N.Y. Aug. 19, 2019) ("[N]onspecific allegations that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim."). To the extent he is suggesting that John Doe #1 is liable due to his supervisory role alone, it is well settled that, under *Monell*, "'[t]o establish a violation of § 1983 by a supervisor, as with everyone else, then, the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights.' *Id.* at 618 (internal quotation marks and citation omitted). It is not sufficient to plead that an official was 'conceivably personally involved.'" *Forrest v. Cnty. of Greene*, 676 F. Supp. 3d 69, 78 (N.D.N.Y. 2023) (quoting *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020)).

as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.") (collecting cases)).

With respect to plaintiff's referencing the "DA's Office" as the offending party in the notice violation, plaintiff cannot name the office itself due to Eleventh Amendment immunity. *See Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir.1997); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir.1993). Further, within this cause of action, plaintiff does not identify which defendants at the DA's Office allegedly violated his Fourteenth Amendment right to notice and opportunity to be heard on the deprivation. If this Court were to allow plaintiff an opportunity to amend to name individual district attorneys in connection with this claim, claims against the district attorneys in their official capacities would similarly be barred by Eleventh Amendment immunity. *See id.* Claims against individual district attorneys in their individual capacities would be barred by absolute prosecutorial immunity. *See Pinaud v. County of Suffolk*, 52 F.3d 1139, 1147 (2d Cir.1995) (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)). Although plaintiff states, with respect to and in connection with other claims in the complaint, that the DA Oastler and DA Mordue were being named for their nonprosecutorial or administrative conduct, which would place them outside of the protection of absolute prosecutorial immunity, it is a close question whether the alleged conduct of unnamed district attorneys in failing to provide this procedure amounts to "acts of investigation or administration," *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994), outside of the protection of prosecutorial immunity or are associated with their function as an advocate. *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (alteration in original). Out of special solicitude to plaintiff, the

undersigned recommends that plaintiff's claims in this cause of action against the "DA's Office" be dismissed with prejudice, but that the dismissal be without prejudice to plaintiff being afforded leave to amend to name individual district attorneys in their individual capacities should he be able to demonstrate that they were acting in their non-advocacy capacity in association with the alleged denial of procedural due process with respect to notice in connection with the continued impoundment of his vehicle.

Similarly, to the extent plaintiff names "SPD" in connection with this Fourteenth Amendment procedural due process notice claim, the Syracuse Police Department is an administrative arm of the municipality and not a proper defendant in a section 1983 action.  Within this cause of action, plaintiff does not identify any specific police officers nor explain how they were involved in the alleged notice-related violation of his Fourteenth Amendment procedural due process rights.  Accordingly, insofar as alleged against the Syracuse Police Department, it is recommended that such claim be dismissed with prejudice.  Insofar as plaintiff wishes to amend to raise any claims against the individual officers in their individual capacities, out of special solicitude, it is recommended that plaintiff be afforded that opportunity to amend.

As for the City of Syracuse, the undersigned recommends this claim be dismissed without prejudice and with opportunity to amend as plaintiff has failed to sufficiently allege that his Fourteenth Amendment procedural due process rights were violated (with respect to notice of the procedure to seek the release of his vehicle from impoundment or challenge the related fees) as a result of a municipal policy or custom or failure to train or supervise.  *See Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (citing *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658,

691 (1978)) (noting that municipality may not be held liable in an action under 42 U.S.C. § 1983 for actions alleged to be unconstitutional by its employees below the policymaking level solely on the basis of respondeat superior"); *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quotations and citation omitted) ("To hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.").

b. **Adequacy of Post-Deprivation Hearing**

In addition to the notice issues set forth above, plaintiff contends that he was deprived of his vehicle without a hearing or meaningful process. *See* Compl. at 6 ("Defendants deprived Plaintiff of his vehicle . . . without any hearing, or any meaningful process for release[.]"). "To determine whether a plaintiff was deprived of property without due process of law in violation of the Fourteenth Amendment," courts "identify the property interest involved, and "determine whether the plaintiff received constitutionally adequate process in the course of the deprivation. *See VW Credit Leasing LTD.*, 2025 WL 501218 (E.D.N.Y. Feb. 14, 2025) (quoting *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005)).

To the extent plaintiff suggests that he is alleging that he was denied procedural due process due to the inadequacy of a post-deprivation hearing, plaintiff has not sufficiently pleaded enough facts to set forth a claim. Further, "plaintiff has not demonstrated 'the absence or inadequacy of any post-deprivation hearing following the impoundment of his vehicle.'" *Hawthorne by Hawthorne*, 492 F. Supp. 3d at 304 (quoting *Clynch v. Chapman*, 285 F. Supp. 2d 213, 223 (D. Conn. 2003) (explaining that

the plaintiff, whose car was towed following his arrest for a DUI, failed to state a

"procedural due process claim" where there was no claim about the absence or

inadequacy of a post-deprivation hearing)).  Indeed, "judges in this district have

consistently found that the availability of state tort law causes of action constitutes an

adequate post-deprivation state remedy."  *Alloul v. City of New York*, No. 09 CIV 7726

JSR FM, 2010 WL 5297215, at *6 (S.D.N.Y. Dec. 21, 2010) (citing *Smith v. City of New

York*, No. 03 Civ. 7576(NRB), 2005 WL 1026551, at *8 (S.D.N.Y. May 3, 2005); *David v.

N.Y.P.D. 42nd Precinct Warrant Squad*, No. 02 Civ. 2581(DC), 2004 WL 1878777, at *5

(S.D.N.Y. Aug. 23, 2004); *see also Dawkins v. Jones*, No. 03 Civ. 0068(DAB)(AJP),

2005 WL 196537, at *17 (S.D.N.Y. Jan. 31, 2005) (due process satisfied by availability

of New York Court of Claims to redress unauthorized acts of state officials); *Smith v.

O'Connor*, 901 F.Supp. 644, 647 (S.D.N.Y.1995).

Plaintiff has not demonstrated an absence of adequate post-deprivation state

remedies through traffic court or an Article 78 proceeding as he does not provide the

Court with any information about any state administrative or judicial remedies he may

have pursued.  *See Byrd v. Westchester Cnty. Police Dep't*, No. 1:24-CV-9547 (LTS),

2025 WL 1456203, at *10 (S.D.N.Y. May 21, 2025) ("Plaintiff has alleged nothing to

suggest that she has pursued any type of state administrative review or judicial review,

including state court judicial review via an Article 78 proceeding, to challenge the

parking and/or traffic violation fines assessed against her and/or the booting and towing

of her vehicle as a result of her delinquency with respect to paying those fines. Thus,

because Plaintiff has not shown that she has pursued any such state process, she

cannot assert that she has been denied procedural due process." ) (citing *Vialez v. New*

*York City Hous. Auth.*, 783 F. Supp.109, 113 (S.D.N.Y. 1991)).  Further, he commenced this action before any court appearances.  Accordingly, as plaintiff has "not shown the Court that []he has pursued any such state process, []he cannot assert that he has been denied procedural due process."  *Id.*

In addition, this claim suffers from similar defects as his notice claim in that he improperly has made a collective pleading against several defendants: here, "City of Syracuse, SPD officers, John Doe #3, FOIL officers, Oastler, Mordue, and Onondaga County," Compl. at 6, without setting forth each defendants' personal involvement. Thus, this claim does not satisfy Rule 8's pleading requirements.  As it relates to the municipal defendants, as discussed further in the *Monell* section of this Report-Recommendation & Order, he has also failed properly allege that the constitutional violation was a result of a municipal policy, custom, failure to supervise or train. Accordingly, it is recommended that plaintiff's Fourteenth Amendment procedural due process claim with respect to the adequacy of post-deprivation remedies is recommended to be dismissed without prejudice and with opportunity to amend due to a failure to comply with Fed. R. Civ. P. 8 by failing to provide sufficient information about the state process(es) he pursued, failure to specify each defendants' personal involvement in the alleged constitutional violation, and failure to sufficiently plead a Monell claim against the municipal defendants.

More specifically, as with the above notice claim, to the extent plaintiff names the City of Syracuse and Onondaga County, such claim is recommended to be dismissed without prejudice and with opportunity to amend for failure to allege a nonconclusory *Monell* claim.  To the extent plaintiff names "SPD officers," this is an improper group

pleading.  If plaintiff intends to name individual police officers in their individual capacities in connection with this claim, it is recommended that this claim be dismissed without prejudice and with leave to replead to identify each police officer and specify each defendants' personal involvement in this alleged Constitutional violation.

### 3.  Access to the Courts

Plaintiff raises a claim for denial of access to the courts, purportedly pursuant to the Fourteenth Amendment, in connection with his allegations surrounding ADA Oastler providing plaintiff a "false" Wednesday court appearance and alleging that he failed to appear[22] – plaintiff has failed to state a claim upon which relief can be granted.  *See* Compl. at 6.

> The Second Circuit has recognized a right of access to the courts, stemming from the First Amendment right to petition for redress, the Privileges and Immunities Clause of Article IV, section 2, and the Due Process Clauses of the Fifth and Fourteenth Amendments.  "Denial of access" claims typically fall into one of two categories. First, litigants may claim that "systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits." *Christopher v. Harbury*, 536 U.S. 403, 413 (U.S.2002). Thus, prisoners have sued for access to a law library, or indigent plaintiffs have sued for waivers of filing fees. Secondly, litigants may claim that they have irrevocably lost the ability to file a lawsuit, typically because of a massive governmental cover-up denying plaintiffs the ability to gather evidence.

*Ponterio v. Kaye*, No. 06 CIV. 6289 HB, 2007 WL 141053, at *9 (S.D.N.Y. Jan. 22, 2007) (internal citations omitted).  Plaintiff's claims fall in the first category.

Plaintiff does not demonstrate any denial of access to the courts or any "actual injury."  *Abreu v. Bascue*, No. 9:18-CV-0186 (MAD/ATB), 2018 WL 11466956, at *12 (N.D.N.Y. May 1, 2018). "A hypothetical injury is not sufficient to state a claim for

---

[22]   The Court addresses the access-to-the-courts claim as it relates to plaintiff's FOIL allegations in the FOIL section of this Report-Recommendation & Order, *infra*.

violation of the right of access to the courts."  *Id.* (quoting *Amaker v. Haponik*, No. 98-CV-2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999)).  "'Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" *Id.* (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)).

Despite defendant Oastler's alleged false statement regarding a Wednesday court appearance, plaintiff contends that he contacted Syracuse City Court who "confirmed" that there was no such appearance ever scheduled. Compl. at 4, 6.  Indeed, plaintiff contends that he has his first appearance relating to the traffic citations is scheduled for January 14, 2026, which had not yet occurred at the time plaintiff commenced this action.  *See id.* at 4.  Thus, with no "Wednesday" appearance scheduled, he will not face any consequences for Oastler's allegedly false allegation that plaintiff failed to appear.  Plaintiff has not shown that defendants have done anything that has prevented plaintiff's ability to communicate with the Court nor has he alleged that they impeded his January 14, 2026, appearance.[23]

Accordingly, even assuming as true for purposes of this review that Oastler told him about an appearance that did not exist and accused plaintiff of failing to appear, this conduct does not amount to denial of access to the Courts for the reasons detailed herein.[24]  Accordingly, plaintiff's allegations on this ground fail to state a claim upon which relief can be granted.

---

[23]   To the extent plaintiff suggests that his lack of access to the FOIL materials amounts to delay of access to the Courts, that argument fails, as discussed *infra*.

[24]   Further, as this statement regarding the existence of a "Wednesday" appearance would have been in his role as a prosecutor, Oastler would be entitled to prosecutorial immunity.  Oastler's statement regarding an appearance, even if intentionally false or misleading, relates to the presenting of the state's case.  Prosecutorial immunity covers "virtually all acts, regardless of motivation, associated with [the

4. **First Amendment Retaliation**

Generally speaking, the First Amendment prohibits government officials from retaliating against individuals for engaging in constitutionally protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). The third element can be satisfied by alleging "either that plaintiff's speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm." *Id.* The issuance of traffic tickets is sufficient injury to support a First Amendment claim. *See Lilly v. Hall*, 16-CV-242, 2019 WL 275799, at *4 (W.D.N.Y. Jan. 22, 2019).

*Lilly v. Swick*, No. 19-CV-176V(SR), 2023 WL 3901566, at *8 (W.D.N.Y. Mar. 22, 2023), *report and recommendation adopted*, No. 19-CV-176 (JLS/HKS), 2023 WL 3559698 (W.D.N.Y. May 18, 2023).

a. **Towing, Impoundment of Vehicle & Seizure of License Plate**

Assuming for the sake of this review only that questioning the basis for the traffic stop, asking to speak to a supervisor, and video recording the stop constitutes protected speech under the First Amendment, plaintiff admits that he was operating his vehicle with suspended registration. *See generally* Compl. His complaint also states that he "renewed his insurance" after the stop, a concession that he was also driving without auto insurance.[25] *Id.* at 3 ("renewed his registration *and insurance* within 24 hours of

---

prosecutor's] function as an advocate." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)). "

[25]   In his December 12, 2025, submission, plaintiff states that he "possessed insurance-related documentation associated with his vehicle[.]" Dkt. No. 12. He does not say that the insurance-related documentation was current and for the vehicle he was driving. Plaintiff further states that he was "temporarily unable to immediately retrieve all digital records" because he was recording[,]" but does not contend that the digital records to which he refers included current, valid auto insurance. *See id.* Finally, he does not contend, either in the complaint or supplement, that he presented proof of valid auto insurance during the stop. *See generally id.*

the stop . . . ."); *id.* at 6 (discussing continued seizure of license plate and vehicle "after he renewed registration *and insurance* and provided proof of compliance").    Further, plaintiff concedes that he did not present proof of valid registration or insurance at the time of the stop.  *See* Compl.; Dkt. No. 12.

Plaintiff's claims that his vehicle was towed in retaliation for his exercise of his First Amendment rights are conclusory and contradicted by the complaint.  Despite plaintiff's contention that the absence of traffic citations for the unregistered vehicle and that he was not issued any traffic citations until the tow truck was ordered is evidence of retaliation and/or bad faith, he does not dispute that his vehicle was unregistered and uninsured at the time of the stop and that he did not present current and valid registration or insurance to the officers.  *See* Compl., Dkt. No. 12.  Decidedly, as noted, *supra*, plaintiff was ticketed for a violation of VTL § 402(4), which is improper plates based on a lack of, or failure to demonstrate, valid registration.  Further, even if he were not ticketed for that infraction(s), as he concedes he did not have valid registration at the time of the stop, plaintiff was not legally permitted to operate his vehicle; thus, the seizure was a reasonable response to these violations.  Because plaintiff was not permitted to operate a vehicle with lapsed registration and/or lack of insurance under the New York State Vehicle and Traffic Law, plaintiff has failed to demonstrate that the citation for violating VTL § 402(4), the towing and impoundment of the vehicle, and seizure of the license plate were "motivated or substantially caused by his exercise of that right." *Lilly*, 2023 WL 3901566, at *8 (citing *Dorsett*, 732 F.3d at 160).

Accordingly, the undersigned recommends that plaintiff's First Amendment claim with respect to the towing and license plate seizure be dismissed for failure to state a

claim.  As a better pleading cannot cure the defects noted herein, it is recommended that the dismissal be with prejudice and without opportunity to amend.

### b.  **Traffic Citations**

Plaintiff contends that the traffic citations he was issued were "false."  Compl. at 5.  He alleges that he was followed for "several blocks without any traffic hazard[,]" *id.* at 6, "was stopped by Syracuse Police Department officers despite no traffic violation being identified prior to the stop," Dkt. no. 12 at 1, 2, and that the traffic citations were issued "only after . . .  Plaintiff had invoked his rights, in order to punish him and shield themselves from scrutiny." Compl. at 2.  Liberally read, plaintiff is alleging that he did not commit any of the traffic violations for which he was ticketed; rather, the citations were issued in retaliation for his exercise of his First Amendment rights.

### i. **NY VTL § 402(4) Citation**

Firstly, as it relates to the traffic citation for NY VTL § 402(4), as noted, *supra*, plaintiff has conceded that he operated his vehicle with expired registration, and plaintiff's ticket for an invalid license plate is due to that absence of a valid registration. Thus, as plaintiff concedes to violating the law underlying the citation for which he was issued, plaintiff cannot demonstrate that defendants' actions in issuing a traffic citation under NY VTL § 402(2), were "motivated or substantially caused by" his exercise of his First Amendment rights.  *Dorsett*, 732 F.3d at 160.  Thus, his allegation that this citation was retaliatory fails and must be dismissed for failure to state a claim.  As a better pleading cannot cure this claim, the dismissal is recommended to be with prejudice.

### ii. **NY VTL § 1163(d) Citations**

As to the remaining traffic citations, plaintiff has contended, collectively, that the traffic citations he was issued were "false" and that they came only after he asked for the reason for the stop, requested a supervisor, and recorded the encounter. *See* Compl. at 5. At this early stage and out of an abundance of caution, the undersigned concludes that it is at least arguable that plaintiff may be able to demonstrate that he did not violate NY VTL § 1163(d), and, thus, state a claim that the police officer defendants present at the stop – who plaintiff identifies as Rich, Milot, Legge, and John Does 1-2 – retaliated against him in response to the exercise of his First Amendment rights with respect to the issuance of § 1163(d) citations.

However, because such claim is inextricably intertwined with plaintiff's traffic court case, the most reasonable approach is that this Court stay any litigation on this matter until the traffic court matter, including any potential appeals, is complete. *See Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000) ("Accordingly, we have held that abstention and dismissal are inappropriate when damages are sought, even when a pending state proceeding raises identical issues and we would dismiss otherwise identical claims for declaratory and injunctive relief, *but that a stay of the action pending resolution of the state proceeding may be appropriate*.") (emphasis added) (citing *Giulini v. Blessing*, 654 F.2d 189, 192-94 (2d Cir.1981)).[26] As plaintiff's First Amendment claim is premised on the allegation that he did not violate NY § VTL 1163(d), should the state court reach a determination that plaintiff *did* commit these traffic violations or if plaintiff

---

[26] "The Supreme Court has declined to reach the issue whether *Younger* applies to claims for money damages, but has noted that even if it does, the federal suit should be stayed, rather than dismissed, if the money damages sought could not be obtained in the pending state proceeding, even if the money damages sought could be obtained in a separate state proceeding." *Kirschner*, 225 F.3d at 238 (citing, *inter alia, Deakins v. Monaghan*, 484 U.S. 193, 201-03 (1988)).

should plead guilty to such violations, it cannot be said that defendants' "actions were motivated or substantially caused by his exercise of that right." *Lilly*, 2023 WL 3901566, at *8. However, if the state court finds that plaintiff did not commit these traffic violations, it appears plaintiff should be permitted to proceed beyond the initial review stage with respect his claim that the § 1163(d) citations were issued in retaliation for his exercise of his First Amendment rights. As the state law proceeding is determinative of his First Amendment claim in this Court, a stay appears the most appropriate approach here.[27]

Accordingly, it is recommended that plaintiff's First Amendment claims against Rich, Milot, Legge, and John Does 1-2 in their individual capacities, with respect to the

---

[27] With thoroughness and judicial economy in mind, the undersigned notes that the couple of district courts in this Circuit that have addressed the question of whether *Heck* bar applies to traffic violations have found in the negative. *See Glasgow v. Beary*, 2 F. Supp. 3d 419, 426 (E.D.N.Y. 2014) ("Rather, plaintiff was found to have committed a violation of the New York Vehicle and Traffic Law, which state law defines as "not a crime." N.Y. Vehicle & Traffic Law § 155. *Heck* does not sweep so broadly. *See Heck*, 512 U.S. at 487, 114 S.Ct. 2364 ("But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed . . . .") (emphasis added)."). It does not appear that the Second Circuit has spoken on the question of whether *Heck* bars review of section 1983 claims arising out of traffic violations absent favorable termination. However, several district and Circuit courts outside of the Second Circuit have held that *Heck* does bar review of section 1983 claims arising out of traffic violations. *See Austin v. City of Tuskegee, Ala.*, 335 F. App'x 856, 856-57 (11th Cir. 2009) (summary order) (finding that a § 1983 action predicated on the plaintiff's "allegedly illegitimate traffic stop and conviction for driving 55 mph in a 45 mph zone" was barred by *Heck* because a judgment in plaintiff's favor "would necessarily imply the invalidity of his conviction for speeding"); *see also Dauven v. Oregon*, 44 F. App'x 255, 256 (9th Cir. 2002) (summary order) (finding dismissal of the plaintiffs' 1983 claims "arising from a traffic citation and subsequent state court proceedings" "was proper because, to the extent the Dauvens' claims would effectively require reversal of the judgment of the Washington County Justice Court, the claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)."); *Kreis v. Smith*, No. 24-CV-3686, 2025 WL 860496, at *4 (E.D. Pa. Mar. 19, 2025) ("Since success on Kreis's claim would necessarily imply the invalidity of his convictions on the charges based on the traffic citations, his claim is not cognizable."). As the plaintiff had not been found guilty of any traffic violations at the time he commenced this action, *Heck* review appears not yet ripe. *See also Stegemann v. Rensselaer Cty. Sheriff's Office*, 648 F. App'x 73, 76 (2d Cir. 2016) (summary order) ("*Heck* bars a § 1983 claim based on an extant conviction, but it has no application to an anticipated future conviction."); *see also Wallace v. Kato*, 549 U.S. 384, 393 (2007) (refuting the argument that "an action which would impugn an anticipated future conviction cannot be brought until that conviction occurs and is set aside" and stating "[w]e are not disposed to embrace this . . . extension of *Heck*") (emphasis in original); *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019) (noting that "some claims do fall outside *Heck*'s ambit when a conviction is merely 'anticipated' "). The *Heck* question may, however, come to the forefront should plaintiff later advise the Court that he was found guilty of these traffic violations.

section 1163(d) citations, be stayed during the pendency of the traffic court proceedings, and (1) if the traffic court reaches guilty determination with respect to the § 1163(d) traffic violations and any appeals are decided against plaintiff, or if he pleads guilty, when the stay is lifted, such claim be dismissed; and (2) if the state court determines that he did not commit the traffic violations, plaintiff may return to the Court to request that the stay be lifted and his First Amendment claim in connection with the § 1163(d) violations proceed.

### 5. **Fourth Amendment Unreasonable Seizure**

Plaintiff contends that the seizure of his license plate and the tow and impoundment of his car violate the Fourth Amendment.  *See* Compl. at 6.  The Fourth Amendment prevents against unreasonable seizures of personal property.  Personal property is seized within the meaning of the Fourth Amendment "when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  At least one Court in this Circuit has held that "[t]he impoundment of an automobile is a seizure within the meaning of the Fourth Amendment." *Loomis v. City of Salamanca Mayor Michael Smith*, No. 19-CV-00440 JLS/JJM, 2020 WL 13822312, at *7 (W.D.N.Y. Nov. 5, 2020) (quoting *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005)).

The undersigned recommends that plaintiff's Fourth Amendment unreasonable seizure claim relating to the towing and impoundment of his vehicle be dismissed. Although in the context of a lapsed inspection, rather than registration, in *Hawthorne by Hawthorne*, the Southern District of New York rejected the plaintiff's Fourth Amendment unreasonable seizure claim where police towed his vehicle, nothing that a motor vehicle

could not be "operated or parked on the public highways of this state" absent a valid inspection sticker; thus, the "[p]laintiff had no legal right to continue to operate his vehicle after Deputy Kennedy's discovery that his inspection sticker had expired." *Hawthorne by Hawthorne*, 492 F. Supp. 3d at 298.  That reasoning applies equally here. NYS VTL § 401 similarly dictates that "[n]o motor vehicle shall be operated or driven upon the public highways of this state without first being registered in accordance with the provisions of this article . . . ."   Further, the tow and impoundment of plaintiff's vehicle also falls within the "community caretaking" exception to the Fourth Amendment warrant requirement because is reasonable to conclude that an unregistered vehicle and/or uninsured vehicle is dangerous to the safety of the public such that the seizure is justified.   "'It is well established that police have the authority, despite the absence of a warrant, to seize and remove from the streets automobiles in the interests of public safety and as part of their community caretaking functions—an authority that is beyond reasonable challenge.'" *VW Credit Leasing LTD. v. Runway Towing Corp.*, 757 F. Supp. 3d 271, 285 (E.D.N.Y. 2024), *reconsideration denied*, No. 20-CV-05306 (HG) (MMH), 2025 WL 501218 (E.D.N.Y. Feb. 14, 2025) (quoting *United States v. Lyle*, 919 F.3d 716, 728 (2d Cir. 2019)).  As plaintiff did not have valid registration, it was reasonable for the police to tow his vehicle as plaintiff could not "lawfully drive" his vehicle away.  *See id.*

Although plaintiff contends that there were "reasonable alternatives" to towing and impoundment, such as allowing his vehicle to be parked until he could renew his registration, even if the officers were not required by law to tow or impound his vehicle, that his vehicle had an expired registration made for "an objectively reasonable basis for

impoundment." *Hawthorne*, 492 F. Supp. 3d at 298; see also id. ("Thus, even if [the defendant officer] acted in part based on improper movies, Plaintiff does not plausibly allege [the defendant] exercised his discretion to impound 'solely for the purpose of investigation.")(quoting *Lyle*, 919 F.3d at 731).

The undesigned finds the same with respect to any allegation that the continued impoundment of his vehicle violates the Fourth Amendment. *See Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2004)); *Gerte v. Borough of Naugatuck*, No. 19-CV-1511, 2021 WL 1165362, at *5 (D. Conn. Mar. 26, 2021) ("Where an initial seizure of property was reasonable, the 'failure to return the items does not, by itself, state a separate Fourth Amendment claim of unreasonable seizure,' and improper retention of property may be addressed as a procedural due process claim.") (quoting *Shaul*, 363 F.3d at 187). Accordingly, it is recommended that the Fourth Amendment unreasonable seizure claim be dismissed for failure to state a claim. As a better pleading will not cure these defects, it is recommended that the dismissal be with prejudice and without leave to amend.

### 6. *Monell*

#### 1. City of Syracuse

With respect to the remaining First Amendment claim – retaliation with respect to the citations for alleged violations of NY § VTL 1163(d) – plaintiff contends that the City of Syracuse[28] is "liable under *Monell* because this retaliation occurred pursuant to its policies or customs regarding vehicle seizure, plate retention, and tolerance of retaliatory enforcement." Compl. at 5. Similarly, as to plaintiff's Fourteenth Amendment

---

[28]    Plaintiff does not name Onondaga County in his First Amendment claim ("Count I"). Compl. at 5.

procedural due process rights with respect to the continued impoundment of his vehicle, plaintiff contends that the "SPD"[29] towed his vehicle without "notice of any hearing or procedure to context the seizure." *Id.* at 3.

Plaintiff also only conclusorily pleads the existence of a formal policy or custom with respect to the First Amendment and Fourteenth Amendment claims. *See* Compl. at 7; *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015) ("[M]ere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details."); *see Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) (collecting cases applying the pleading standards discussed in *Iqbal* to *Monell* pleadings). "Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, *see Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), a complaint does not 'suffice if it tenders naked assertion[s] devoid of further factual enhancement.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

An "official policy or custom" of the municipality can be shown in several ways:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a "custom or usage" sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train

---

[29]    As noted, *supra*, in addressing plaintiff's procedural due process claim with respect to the continued impoundment, plaintiff may not proceed against the police department pursuant to *Monell*, and even if the Court interprets this claim as intended to have been made against the City of Syracuse, the claim still fails to demonstrate that the alleged violation was pursuant to an official policy or custom or a failure to train or supervise.

> or supervise subordinates to such an extent that it amounts to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

*Dorsett-Felicelli, Inc. v. Cnty. of Clinton*, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005)

(citations omitted); *see also Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011)

("A municipal policy may be pronounced or tacit and reflected in either action or

inaction."); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004)

("[W]here a policymaking official exhibits deliberate indifference to constitutional

deprivations caused by subordinates, such that the official's inaction constitutes a

deliberate choice, that acquiescence may be properly thought of as a city policy or

custom that is actionable under § 1983.") (internal quotations and citations omitted).

Despite alleging that the City of Syracuse had "policies or customs regarding

vehicle seizure, plate retention, and tolerance of retaliatory enforcement," "[a]

policy/custom of seizing and retaining vehicles . . . without charges or process," a

"failure to train SPD officers regarding reciprocity for out-of-state registrations and lawful

towing authority," Compl. at 5, plaintiff does not explain what most of those policies

actually were, offer factual support for these claims, or allege a causal link between the

policies and the alleged constitutional deprivations.  *See Gerken v. Gordon*, No. 1:24-

CV-00435 (MAD/CFH), 2024 WL 4608307, at *13 (N.D.N.Y. Oct. 29, 2024), *report and

recommendation adopted*, No. 1:24-CV-435 (MAD/CFH), 2024 WL 5001402 (N.D.N.Y.

Dec. 6, 2024), *aff'd*, No. 24-3336, 2025 WL 2847429 (2d Cir. Oct. 8, 2025) (citing

*Meyers v. Becker*, No. 1:23-CV-173 (DNH/CFH), 2023 WL 4424128, at *4 (N.D.N.Y.

May 31, 2023) (concluding that the plaintiff's complaint was "insufficient to allege a

claim for municipal liability" because the "[p]laintiff does not state what Schoharie

County's alleged policy was or how it negatively impacted [him]"); *see also Syfert v. City*

*of Rome*, No. 6:17-CV-0578 (GTS/TWD), 2018 WL 3121611, at *7 (N.D.N.Y. Feb. 12, 2018) (collecting cases dismissing *Monell* claims where the complaint contains no factual support for the existence of an unconstitutional policy or custom and only conclusory allegations referencing a failure to train); *Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) (explaining that a *Monell* claim requires the plaintiff to show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation").  The undersigned concludes that plaintiff has failed to sufficiently plead that the City of Syracuse's alleged violation of his First Amendment right with respect to the allegedly false and retaliatory traffic citations was due to a municipal policy or custom.  *See Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 532 (S.D.N.Y. 2012) (quoting *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008)) ("Normally, 'a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality].'").

As the undersigned recommends with respect to the City of Syracuse, this claim be dismissed without prejudice.  It is recommended that plaintiff then be given an opportunity to amend to plead municipal liability against the City of Syracuse in connection with this claim.  However, as the undersigned has recommended that his First Amendment claim be stayed, that stay recommendation encompasses any amended First Amendment claim against the City of Syracuse.  Thus, review of any amended claim is recommended to be stayed pending completion of the traffic court proceedings and any resulting appeals.

### 2. **Onondaga County**

Plaintiff contends that "Onondaga County is liable for the DA's Office's pattern of FOUL obstruction, false statements, and refusal to correct the record. Comp. at 6. Firstly, as the undersigned has concluded that there are no constitutional claim associated with this alleged conduct, there would be no claim *Monell* claim against the County. However, "Count V" of his complaint, plaintiff contends that the City and County are liable for the seizure of his vehicle and alleged failure to train Syracuse Police Department Officers. Plaintiff's *Monell* claim against Onondaga County with respect to the Fourteenth Amendment notice and post-deprivation process claims fails for the same reasons detailed with respect to his First Amendment claims against the City of Syracuse. To the extent plaintiff wishes to bring any *Monell* claim against Onondaga County for Fourteenth Amendment violations, it is recommended that such claims be dismissed without prejudice and with opportunity to aemdn.

### a. **Individual Officers, Official Capacity**

The claims against the individual municipal officers in their official capacities are duplicative of the claims against the City/County based on their alleged policies or customs. *See Dudek v. Nassau Cnty. Sheriff's Dep't*, 991 F. Supp. 2d 402, 413 (E.D.N.Y. 2013) (citing, *inter alia*, *Ky. v. Graham*, 473 U.S. 159, 165-66 & 167 n.14 (1985) (holding that "[o]fficial-capacity suits, in contrast [with personal-capacity suits], 'generally represent only another way of pleading an action against an entity of which an officer is an agent'" and that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, *supra*, local government units can be sued directly") (quoting *Monell*, 436 U.S. at 690 n.55). Accordingly, it is

recommended that the claims against the individual municipal officers in their official

capacities be dismissed as duplicative of the claims against the City/ County.

### 7. Demand for Immediate Release of Vehicle & Waiver/Reimbursement of Fees

In his complaint, plaintiff seeks "injunctive relief"[30] by way of immediate release of

his vehicle and license plate and a waiver or reimbursement of all towing and storage

fees. *See* Compl. at 8. The undersigned observes that the request for injunctive relief in

the complaint can also be dismissed as an improper request as it "sounds in the realm

of the writ of mandamus[,]" *DiBello v. Town of N. Greenbush Plan. Bd.*, No. 1:09-CV-

00692 (LEK), 2012 WL 6058136, at *4 (N.D.N.Y. Dec. 6, 2012).[31]

---

[30]  Although plaintiff indicates in his complaint that he seeks a declaration that defendants violated his constitutional rights, because a finding by this Court in plaintiff's favor on the merits underlying this claim would involve a determination that defendants violated his constitutional rights, this request for "declaratory" relief is unnecessary.  *See VW Credit Leasing LTD.*, 757 F. Supp. 3d at 290 (citing *Performing Arts Ctr. v. Actor's Equity Ass'n*, No. 20-cv-2531, 2022 WL 16755284, at *16 (E.D.N.Y. Aug. 25, 2022) (""[A] request for a declaratory judgment is not a cause of action; it is a request for a remedy that does not exist independent of a plausible underlying claim for relief.")).

Further, the undersigned observes that the *Younger* abstention doctrine bars requests for declaratory relief; however, it does not bar plaintiff's request for monetary damages.  *See Rivers v. McLeod*, 252 F.3d 99, 101-02 (2d Cir. 2001) ("[T]he *Younger* doctrine is inappropriate where the litigant seeks money damages for an alleged violation of § 1983.").  The *Younger* doctrine may, however, bar his request for injunctive relief in the complaint.

> Application of this Younger abstention doctrine has been extended to the three following categories of state court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'n, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013). It applies to claims for injunctive relief, as well as to claims for declaratory relief, sought in a federal court, that would cause that court to intervene in any of those abovementioned types of state court proceedings. See Kirschner v. Klemons, 225 F.3d 227, 235 (2d Cir. 2000).

*Byrd v. Westchester Cnty. Police Dep't*, No. 1:24-CV-9547 (LTS), 2025 WL 1456203, at *7 (S.D.N.Y. May 21, 2025); *see also Montaque v. Hanlon*, No. 25-CV-694 (JLS), 2025 WL 2848563, at *2 (W.D.N.Y. Aug. 29, 2025) ("Because federal courts generally do not interfere with ongoing state court proceedings, see *Younger v. Harris*, 401 U.S. 37, 46 (1971), Montaque's motions are denied.").  As there are separate motions for injunctive relief pending before the District Judge, Dkt. No. 7, 8, which request the same relief, the undersigned declines to reach the *Younger* question with respect to the injunctive relief requested in the complaint, especially because the relief has been recommended to be dismissed as improperly sounding in mandamus relief.

"The common-law writ of mandamus . . . is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). Further, "the Mandamus Act provides that '[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel *an officer or employee of the United States or any agency thereof* to perform a duty owed to the plaintiff.'" *Walker v. Rosa*, No. 1:24-CV-1171 (AJB/PJE), 2025 WL 3287025, at *4 (N.D.N.Y. Oct. 29, 2025), *report and recommendation adopted*, 2025 WL 3282707 (N.D.N.Y. Nov. 25, 2025) (quoting *Espindola v. U.S. Dep't of Homeland Sec'y*, 1:20-CV-1596 (MAD/DJS), 2021 WL 3569840, at *3 (N.D.N.Y. Aug. 12, 2021) (then quoting 28 U.S.C. § 1361)(emphasis added)). "By its own terms, the Mandamus Act confers jurisdiction over only officers or employees of the United States; it does not confer jurisdiction over state or local officials." *Id.* (quoting *Marom v. Town of Greenburgh*, No. 20-CV-3486 (PMH), 2021 WL 797648, at *4 (S.D.N.Y. Mar. 2, 2021)). Here, the Court does not have mandamus jurisdiction to order the municipal entities to immediately (1) release his plate or vehicle, nor (2) waive/reimburse fees. *See Walker*, 2025 WL 3287025, at *4.

### 7. **Tow-Yard Defendants**

Plaintiff contends that the tow-yard defendants acted under the color of state law insofar as they "follow[ed] SPD orders and refus[ed] to release the vehicle absent governmental approval[,]" which he says violates the Fourteenth Amendment rights. Compl. at 6. Courts have regularly rejected arguments such as plaintiff's with respect to tow companies being held to be state actors/acting under color of state law. *See VW Credit Leasing LTD.*, 757 F. Supp. 3d at 289 ("Courts have rejected the notion that

private towing companies operating pursuant to licenses, permits, or contracts issued by the state are state actors. ") (citing *Calderon v. Burton*, 457 F. Supp. 2d 480, 488 (S.D.N.Y. 2006) ("Companies that provide services to municipalities . . . are not thereby transformed into state actors . . . where, as here, the function performed (towing cars) has not been historically, traditionally and exclusively the prerogative of the state.")). Even assuming the tow-yard had a contract with the City to provide towing and impoundment services to the City, "(no such contract is pleaded, but I am bending over backwards for plaintiff), there is no indication that [the City] had any proprietary interest [in the tow-yard company] – a factor deemed significant by the Second Circuit Court of Appeals in determining whether there exists a symbiotic relationship between the state and a private party." *Calderon*, 457 F. Supp. 2d at 488 (citing *Hadges v. Yonkers Racing Corp.*, 918 F.2d 1079, 1082 (2d Cir.1990), *cert. denied*, 499 U.S. 960 (1991)); *cf. Mercedes-Benz Fin. Svcs. USA, LLC v. City of New York*, 770 F. Supp. 3d 643 (S.D.N.Y 2025) ("Here, there is more than mere licensing—YTR's towing of the Vehicle is joint action with and directed by Yonkers.").

Plaintiff has also presented no basis to find that the tow-yard defendants acted under the color of state law in connection with his Fourteenth Amendment due process claim with respect to the continued impoundment of his vehicle. He has not demonstrated that the *municipality* derived profit from the tow-yard company's towing or impoundment of plaintiff's vehicle. *See Calderon*, 457 F. Supp. 2d at 488 (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 840-41 (1982); *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Black by Black v. Indiana Area School Dist.*, 985 F.2d 707, 711 (3d Cir.1993) ("No facts are alleged tending to suggest that the Village derived any profit

from A & P's towing of cars. Numerous cases hold that companies that provide services to municipalities pursuant to contracts are not thereby transformed into state actors—at least where, as here, the function performed (towing cars) has not been historically, traditionally and exclusively the prerogative of the state.").  Moreover, plaintiff has not alleged nor provided any evidence that the tow-yard defendants "were involved in the decision to impound the vehicle or had reason to know that the decision was [allegedly] unlawful. *Perkins v. Halas*, No. 3:18-CV-01081-MEG, 2025 WL 685980 (D. Conn. Mar. 4, 2025).  However, out of special solicitude to the pro se plaintiff, it is recommended that the Fourteenth Amendment due process claim relating to continued impoundment against the tow-yard defendants be dismissed against the tow-yard defendants without prejudice and with opportunity to amend should he be able to demonstrate that the tow-yard defendants acted under the color of state law.[32]

### 8. **State Law Claims**

Plaintiff contends that (1) "SPD officers, SPD records staff, tow-yard defendants, and municipalities wrongly exercised dominion over plaintiff's vehicle and Ohio plate, constituting conversion and trespass to chattels"; (2) their conduct in "seizing, retaining, failing to release Plaintiff's property after notice of compliance" amounts to negligence and gross negligence; and (3) "intentional pattern of false statements, FOIL obstruction, retaliatory tickets, and prolonged deprivation of basic transportation rises to intentional infliction of emotional distress under New York law."  Compl. at 1.  Plaintiff's state law claims are an improper collective pleading, and, thus, fail on this ground alone.  *See Moore*, 2019 WL 3889859, at *5 (("[N]onspecific allegations that rely on group pleading

---

[32]  The undersigned addresses any state-law claims pled against the tow-yard defendants in the state-law section of this Report-Recommendation & Order.

and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim."); *see also Lawrence v. Shattick*, No. 8:24-CV-656 (MAD/DJS), 2025 WL 542587, at *8 (N.D.N.Y. Feb. 19, 2025) (affirming dismissal of state law claims under Rule 8(a), noting that the complaint failed to explain how each defendant committed each state law tort: "[t]he various Defendants are accused of a variety of misconduct over a span of time elsewhere in the Complaint and the broad assertion that all are liable for these state law torts without any explanation of how each is alleged to have committed the torts is not permissible."); *Smith v. D'Agostino*, No. 25-CV-1265-MAV-CDH, 2025 WL 3525935, at *11 (W.D.N.Y. Dec. 9, 2025) (quoting *Discon Inc. v. NYNEX Corp.*, No. 90-CV-546A, 1992 WL 193683, at *16 (W.D.N.Y. June 23, 1992) ("It is not the duty of the defendants or this Court to sift through the Complaint and guess which factual allegations support which claims.").

As an additional issue, to the extent plaintiff seeks to bring his state law claims against municipal defendants,[33] plaintiff has not demonstrated that he filed a notice of claim on the municipality, which, if true, may afford an alternate ground to bar any state-law tort claims against the municipality. *See* N.Y. GEN. MUN. LAW §§ 50-e, § 50–i; *Alloul v*, 2010 WL 5297215, at *7-8.

Next, although the group pleading and lack of personal involvement serve as grounds for dismissal of all of plaintiff's state law claims against all defendants, several of plaintiff's allegations also fail on the merits. As the undersigned concludes that plaintiff's federal claims with respect to the tow, seizure of his plate, and initial impoundment are without merit, his state law claims for conversion, trespass to chattels,

---

[33]  Given plaintiff's collective pleading approach, it is not entirely clear to the undersigned whether plaintiff intends to raise state law claims against the City of Syracuse/Onondaga County. *See* Compl. at 7.

and negligence/gross negligence – which arise out of and relate to those federal claims – similarly fail.  To wit, plaintiff bases his state law claims on the allegation that defendants "wrongfully exercised dominion over Plaintiff's vehicle and Ohio plate, constituting conversion and trespass to chattels" and that the tow and seizure amount to negligence.  Compl. at 7.  However, as the undersigned has already established that the police officer defendants had legal authority to seize his license plate, order his vehicle towed, and initially impound his vehicle due to his driving without a valid registration – conduct he admits – his state law claims with respect to the seizure of the license plate, tow, and initial impoundment fail to state a claim. Accordingly, plaintiff's state law claims for conversion, trespass to chattels, and negligence fail to state a claim upon which relief can be granted.

Under New York law, to sufficiently plead a claim for intentional infliction of emotional distress, a plaintiff must allege "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001). "A claim for intentional infliction of emotional distress is generally unavailable where other traditional tort remedies are available." *Ivery v. Baldauf*, 284 F. Supp. 3d 426, 441 (W.D.N.Y. 2018) (citation and quotation marks omitted). "In New York, claims for intentional infliction of emotional distress are 'extremely disfavored,' and '[o]nly the most egregious conduct has been found sufficiently extreme and outrageous to establish' such a claim."  *Ivery v. Baldauf*, 284 F. Supp. 3d 426, 441 (W.D.N.Y. 2018) (quoting *Medcalf v. Walsh,* 938 F.Supp. 2d 478, 488 (S.D.N.Y. 2013); then citing

*Tebbenhoff v. Elec. Data Sys. Corp.*, 244 F.Appx. 382, 384 (2d Cir. 2007) (summary order); *see also Semper v. New York Methodist Hosp.*, 786 F.Supp.2d 566, 586 (E.D.N.Y 2011) ("this highly disfavored cause of action is almost never successful") (internal quotes omitted); *Clark v. Hanover Ins. Grp., Inc.*, No. 3:24-CV-348 (SVN), 2025 WL 2053366, at *7 (D. Conn. July 22, 2025) (dismissing IIED claim, noting that the "amended complaint merely alleges that Hanover denied liability for the accident and filed an insurance claim against the plaintiff, and that Hanover's conduct caused Plaintiff to suffer 'physical, mental, and emotional distress, pain, and suffering.'").  Further, "under New York law, "public policy bars claims sounding in intentional infliction of emotional distress against a governmental entity."  *D'Angelo-Fenton v. Town of Carmel*, 470 F. Supp. 2d 387, 399 (S.D.N.Y. 2007) (citing, *inter alia*, *Wyllie v. Dist. Attorney of County of Kings*, 2 A.D.3d 714, 720, 770 N.Y.S.2d 110 (2d Dep't 2003).

        To the extent plaintiff refers to the issuance of allegedly-retaliatory tickets, as basis for an intentional infliction of emotional distress claim, in addition to failing to establish the defendants' personal involvement due to his having set forth an improper group pleading, to the extent the claims refer to the NY VTL § 402(4) citation, this claim fails on the merits.  The undersigned has concluded that plaintiff's concession of driving without valid registration and/or insurance demonstrate the ticket was not retaliatory, but reasonable under the law.  Similarly, to the extent plaintiff bases his intentional infliction of emotional distress claim on the tow and seizure of his license plate, as plaintiff was not legally permitted to drive the vehicle, it was neither extreme nor outrageous conduct to tow the vehicle.

        As to his claim for intentional infliction of emotional distress, with respect to

(1) the allegedly retaliatory issuance of citations for violations of NY VTL 1163(b), and (2) the continued impoundment of his vehicle, even if the undersigned disregards the pleading and personal involvement defects, none of the alleged conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (quoting *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122 (1993)).  Plaintiff demonstrates experiencing "emotional distress, humiliation, anxiety, and loss of sleep" from the alleged wrongful continued impoundment and alleged retaliatory ticketing for § 1163(b) violations and expresses inconvenience and frustration with its inconvenience, monetary consequences, and alleged impact on his reputation, yet, even if the claims in the complaint are proven true, such claims are nowhere near close to meeting the "rigorous, and difficult to satisfy," standard for IIED as alleged behavior is not sufficiently outrageous to impose liability. *See Howell v. New York Post Co.*, 81 N.Y.2d 115, 121-22 (1993).   To the extent plaintiff, in referring to "false statements" is referring to plaintiff's allegations regarding ADA Oastler and the "false" Wednesday court appearance, the undersigned concludes that also would not rise to the "extreme and outrageous" conduct threshold. Accordingly, in addition to dismissal for an improper group pleading and failure to plead each defendants' personal involvement, it is recommended that plaintiff's IIED claims be dismissed without opportunity to amend for failure to state a claim.

As to plaintiff's state-law negligence claims, in addition to the group pleading and lack of personal involvement defects above, plaintiff has failed to plead—let alone plausibly allege—the duty defendants owed him, whether that duty was breached, the

proximate result of the breach, and damages. *See Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985)). Thus, this failure to plead any element of the claim is fatal to plaintiff's negligence claim. *See Ashcroft*, 556 U.S. at 678. However, out of special solicitude, it is recommended plaintiff be given leave to amend with respect to his negligence claim should he be able to demonstrate each defendants' personal involvement, set forth the elements of the claim, and, as to the municipal defendant(s), demonstrate proper compliance with a notice of claim or an exception thereto.

## V. **Conclusion**

Wherefore, for the reasons set forth herein, it is hereby:

**ORDERED**, that plaintiff's in forma pauperis application, Dkt. No. 4, is granted; and it is

**RECOMMENDED**, that plaintiff's First Amendment retaliation claim alleged against Rich, Milot, Legge, John Doe 1-2, in their individual capacities, for issuance of alleged retaliatory traffic citations for violations of NY § VTL 1163(d), Dkt. No. 1, be **STAYED** during the pendency of his traffic court proceedings and any resulting appeals, and that, plaintiff is to return to this Court following *completion* of the traffic proceedings and any resultant appeals or expiration of time for such appeals, as set forth herein; and that it is further

**RECOMMENDED**, that plaintiff's First Amendment retaliation claim for issuance of alleged retaliatory traffic tickets for violations of NY § VTL 1163(d) against individual officers, Rich, Milot, Legge, and John Doe #1-2, in their official capacities, Dkt. No. 1, be **DISMISSED with prejudice**; and it is further

**RECOMMENDED**, that plaintiff's *Monell* claims against the City of Syracuse and/or Onondaga County in connection with his (1) First Amendment retaliation claim for issuance of alleged retaliatory traffic tickets for violations of NY § VTL 1163(d), and (2) Fourteenth Amendment due process claim with respect to the alleged failure to provide sufficient notice regarding the procedure to seek release of his vehicle from impoundment, return of his license plate, and to challenge the tow/impoundment fees, Dkt. No. 1, be **DISMISSED without prejudice and with opportunity to amend**, but that any review of the amended complaint be **STAYED** during the pendency of his traffic court proceedings and any resulting appeals for the reasons detailed herein; and it is further

**RECOMMENDED**, that, to the extent plaintiff seeks to bring a Fourteenth Amendment procedural due process claim with respect to the continued impoundment of his vehicle against the District Attorneys' Office, Dkt. No. 1, such claim be dismissed **without prejudice and without opportunity to amend** due to Eleventh Amendment immunity,[34]

**RECOMMENDED**, that, to the extent plaintiff seeks to bring a Fourteenth Amendment procedural due process claim with respect to the continued impoundment of his vehicle and lack of notice of post-deprivation remedies against presently unnamed individual district attorneys in their individual capacities, Dkt. No. 1, such claim

---

[34] *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996) (noting that a claim barred by a state's sovereign immunity is properly dismissed under the Eleventh Amendment for a lack of subject matter jurisdiction); *see also Phillips v. Schenectady Child Support Unite*, No. 1:24-CV-853 (BKS/PJE), 2025 WL 895035, at *7 (N.D.N.Y. Mar. 24, 2025), *report and recommendation adopted sub nom. Phillips v. Schenectady Cnty. Child Support Unit*, No. 1:24-CV-853 (BKS/PJE), 2025 WL 1191320, at *7 n.15 (N.D.N.Y. Apr. 24, 2025), *appeal dismissed* (Sept. 18, 2025) ("A dismissal for lack of subject matter jurisdiction must be without prejudice, because without jurisdiction, the district court lacks the power to adjudicate the merits of the case.") (citations omitted).

be **DISMISSED without prejudice and with opportunity to amend**[35] should he be able to identify specific defendants' personal involvement and demonstrate an exception to prosecutorial immunity; and it is further

      **RECOMMENDED**, that plaintiff's Fourteenth Amendment due process claim with respect to the alleged failure to provide *notice* regarding the procedure to seek release of his vehicle from impoundment, return of his license plate, and to challenge the tow/impoundment fees as alleged against "SPD" be **DISMISSED with prejudice and without opportunity to amend** as against the Syracuse Police Department, except that the dismissal be **without prejudice** to plaintiff seeking to name individual police officers in their individual capacities with respect to the continued impoundment issue only should he be able to demonstrate their personal involvement; and it is further

      **RECOMMENDED**, that to the extent plaintiff seeks to bring a Fourteenth Amendment procedural due process claim against the tow-yard defendants with respect to the continued impoundment of his vehicle, Dkt. No. 1, it is recommended that this claim be **DISMISSED without prejudice and with leave to amend** should he be able to demonstrate that the tow-yard defendants were acting under color of state law; and it is further

      **RECOMMENDED**, that plaintiff's request for injunctive relief in his complaint, Dkt. No. 1 at 8, be **DISMISSED without prejudice and without opportunity to amend** for lack of subject matter jurisdiction, and it is further

---

[35] In the event the District Judge adopts the undersigned's Report-Recommendation and Order and plaintiff is permitted an opportunity to amend his complaint, plaintiff is advised that any amended pleading cannot incorporate a prior pleading by reference. Any amended pleading supersedes and replaces a prior pleading in its entirety. An amended pleading must establish this Court's jurisdiction and state a claim for relief against each named defendant for which leave to replead was granted according to Rules 8 and 10 of the Federal Rules of Civil Procedure.

**RECOMMENDED**, that plaintiff's (1) First Amendment Retaliation claim with respect to the stop, the tow, seizure of his license plate, initial impoundment of his vehicle, and issuance of the citation for NYS § VTL 402(4); (2) Fourth Amendment unreasonable seizure claim; (3) First and Fourteenth Amendments Denial of Access to the Courts claim; and (4) Fourteenth Amendment Procedural Due Process claim relating to his FOIL concerns, Dkt. No. 1, be **DISMISSED with prejudice**, for failure to state a claim, and **without opportunity to amend** because a better pleading would not cure the defects; and it is further

**RECOMMENDED**, that plaintiff's state law claims for (1) conversion, (2) trespass to chattels, and (3) intentional infliction of emotional distress be **DISMISSED with prejudice and without opportunity to amend**, and it is further

**RECOMMENDED**, that plaintiff's state law negligence claim be **DISMISSED without prejudice and with leave to amend**; and it is further

**RECOMMENDED**, that should plaintiff be permitted to amend his complaint as specified herein, to avoid piecemeal litigation and in consideration of judicial economy, review of any amended complaint be stayed during the pendency of plaintiff's traffic court proceeding and any resultant appeals or expiration of time to appeal;

**RECOMMENDED**, that plaintiff's (1) Motion to Compel, Dkt. No. 9; (2) Motion for In Camera Review, Privilege Log, and Preservation of Records, Dkt. No. 11; and (3) Motion for Early Settlement Conference or Judicial Mediation, Dkt. No. 14, and (4) Request for limited discovery regarding the identity of John Doe defendants, Dkt. No. 15 be **DENIED without prejudice as premature**; and it is

**ORDERED**, that, pursuant to the Court's January 6, 2026, directive, Dkt. No. 16, and as detailed in the Court's December 17, 2025, text order, Dkt. No. 10, plaintiff's service deadline with respect to the Emergency Motion for TRO/PI and related documents is reset to **ten (10) days** after the filing date of this Report-Recommendation & Order, and regular service of the Motion to Stay, Dkt. No. 7; Emergency Motion for TRO/PI, Dkt. No. 8; Complaint,[36] Dkt. No. 1, and related text orders, Dkt. Nos. 10, 16, is to be effectuated by the U.S. Marshal's Service.

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72.[37]

Dated: January 20, 2026

---

[36] Plaintiff is reminded that, although he is being directed to serve the complaint, this is not an indication that the underlying case proceeds pursuant to the undersigned's section 1915 review; rather, the service of the complaint when seeking a temporary restraining order and/or preliminary injunction is a requirement in the Local Rules. *See* N.D.N.Y. L.R. 65.1. Thus, this directive relates exclusively to service for that purpose. The U.S. Marshal Service will file proof of service.

[37] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. *See* FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal federal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal federal holiday. *See id.* § 6(a)(1)(c).

Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge